now move to United States v. Mitchell. Let me just confirm that counsel's on the line. Yes, Your Honor. For Naomi Mitchell, Abraham Shul. Okay, Mr. Shul. And Mr. Moskow, are you also there? I am, Your Honor. Thank you. Okay. So, Mr. Shul, you've reserved two minutes of rebuttal, so you may proceed. May it please the court for Naomi Mitchell, Abraham Shul. Because the district court committed plain error when it instructed the jury using a misleading and guilt-presumptive hypothetical, this court should vacate the conviction and order a new trial. After two days of testimony and an afternoon of deliberation, the jury was at an impasse. In a note to the court, the jury requested clarification of the difference between mistake and intent as it relates to the statute. This distinction was crucial. Ms. Mitchell's defense was that she never intentionally delayed mail, but she may have accidentally left some in her car. The trial court, in responding to the jury note, committed plain error. The prejudicial portion of the instruction read, A mistake does not mean, well, I know I did something wrong and I'm sorry. That's not the mistake in the context of that in the jury instruction. Naomi Mitchell testified in this case. She took the stand and she never claimed, nor did her lawyer argue, that she had made a mistake, done something wrong, and was sorry. However, the trial court instructed the jury on this misleading theory, seriously affecting the fairness of the judicial process, and persuaded by this prejudicial instruction, nine minutes later, the jury returned with a guilty verdict. Today, I will discuss two main issues. One, why Ms. Mitchell did not waive her right to appellate review of this instruction, and two, why the instruction was plain error. The prejudicial jury instruction was suggested and drafted by the trial court, and not endorsed by counsel. The defendant, or defense counsel, in response to the jury's question, requested that the court only charge the jury with banned definition of knowingly. Excuse me, you have one more minute. Thank you. I'll point the court to page 299 of the appendix. When discussing this issue, the trial court asked the court, do both sides agree that I should just give the instruction unknowingly, and perhaps that will help them? Ms. Kelman, I think so, judge. I think that will give them the direction they are looking for. The government then pushed the court to include the or requested the portion of the instruction stating, a mistake does not mean well, I know I did something wrong, and I'm sorry. I think that this is a good point. I'm roughly at three minutes to open it up for any questions. All right. Judge Winter, do you have any questions for Mr. Schumer? No, I don't. Thank you. Judge Wesley? In the government's case, the agent indicated that when Ms. Mitchell had spoken with him, this is at appendix 173, that she said she had made a mistake. Isn't that what his testimony was? That is approximately his testimony. And wasn't the defense that a mistake, the way to understand a mistake is that a mistake is something that, I made a mistake, I left the door open, or I made a mistake. Apparently, I left, in her instance, it was mail was underneath the front seat of her car. I left some mail that I didn't, I didn't know that the mail was still in my car, implying that she didn't intentionally not deliver the mail, but it was a mistake. She just, she had not, the mail was misplaced, and therefore, it wasn't intentional on her part. Isn't that what the defense's theory was? Yes, that's correct. And in fact, the defense repeatedly had talked about what the word mistake meant, didn't it? In terms of the colloquy or during summation? Well, and go ahead. I'm not sure that the defense did repeatedly talk about the word mistake. Well, obviously, the word mistake is what ends up being the difficulty here. And I don't, what I don't understand is how this is presuming that she's presuming guilt on the part of the defendant. The charge was mistake is defined in the law and law dictionary in part as an error or misunderstanding. And trial counsel didn't want that, but said, I, in fact, my recollection, what she said was, I think it's helpful to us, not to the government. And then it says, so in the context of this case, for example, mistake would be if the defendant believed she delivered all the mail, but it accidentally or unknowingly left mail behind. That's, that's exculpatory, isn't it? Yes, we, we, so, so wait, wait for a second. Was that inappropriate to give something that's exculpatory to the defendant? No. And I'd say the reason, but then, but, but officer agent had a different interpretation, what mistake meant. He thought it meant that she was admitting that she had done something wrong. Is that what he said? I, I think that there is multiple ways to look at his agent Likaios testimony. Right. And, and then that that's where the rubber met the road in this case, is that everything turned out, whether she was, had made a mistake, just didn't know that she had the mail or that she'd made a mistake. She knew she'd done something wrong. And so the word mistake became a cornerstone to understanding whether she had acted intentionally or, or, or negligently. Right. I think the problem with that is that the court went beyond that first by saying, I made a mistake and I'm sorry, which is clearly not anything that was reflected. That's not what the court said first. I'm reading, I'm reading to you what the court said. This is at a three to three Oh two mistake is defined in the law dictionary in part as an error or misunderstanding. So in the context of this case, for in the context of this case, for example, a mistake would be if the defendant believes she had delivered all the mail, but it accidentally or unknowingly left male from male behind. Okay. Then, then she says a mistake does not mean, well, I know I did something wrong and I'm sorry. That's exculpatory. Isn't it? Then she says, that's not the mistake mistake in the context of that jury instruction. Right. The dependent issue with the instruction is the, is that it is obviously the second portion of the instruction where she says that she knew that she did something wrong. I was sorry. Um, well, who asked, who asked for the instruction on knowingly? Uh, well, so how is it? It's a simple question. It's a simple question. Who asked for the, the instruction on knowingly the defendant. Okay. Thank you. Let me, this is judge Sullivan. I wanted to get back to the waiver issue. I mean, you, you quoted a portion of the transcript from the trial, uh, in which Ms. Kelman asked about the, you know, just instructing the jury on the definition of knowingly. But after that, there's a discussion in which the court then states the instruction she intended to give, including the portion that you're now objecting to. Uh, but the judge says it. And then Ms. Kelman says, right. So a mistake does not mean I did something wrong and I'm sorry. And Ms. Kelman said, right. Uh, and then the court continues and says, and then I would just say to the jury, to the extent there is any confusion about what mental state has to be shown here, let me define knowingly for you. And Ms. Kelman again says, that's fine, judge. I mean, hasn't she endorsed the instruction that was ultimately given? So I think that, and I'll you to page 300 of our appendix, which is what you're referring to. Um, after Ms. Kelman says that fine judge. And in the context of this, she says, I think since we are making up the definition and the sense of mistake, the word misconception is not really relevant in this case. And I don't think we need to give them a word that really doesn't apply here. I think you are right in terms of what our defense is. And then the court says error or misunderstanding. Ms. Kelman says, yes. So I think that defense counsel never endorsed the prejudicial portion of the charge, which is, I know I did something wrong and I am sorry. Um, and you know, I, just to, um, I think it would be helpful to readdress the earlier question as well. And to look more at testimony, um, which I'll point you to the appendix on page one 70, as well as the cross examination, um, on cross examination, um, Ms. Kelman questions, agent Lakayo. And she says, did she tell you repeatedly that she never held the mail on purpose? Right. But she also, that she made a mistake by holding the mail, not delivering the mail question. She said that was a mistake. She wasn't doing it deliberately. Is that what she told you? There's an objection. Then there's another question. And Ms. Kelman refreshes his recollection. Does looking at the document line for particularly help you remember whether or not she said she didn't hold the mail on purpose answer, right? She didn't hold the mail on purpose question and that she didn't leave the mail on the street. She told you that right answer. That is correct. So, um, our position is of course that that statement, um, not only was it prejudicial, but it also mischaracterized the trial testimony and led the jury to believe that Naomi Mitchell had actually stated something like, I know I did something wrong and I'm sorry, which is not reflected on the record. All right. Any other questions from the judges? No. Thank you. All right. So Mr. Shaw, you reserved two minutes. We'll now hear from Mr. Moskow before the, uh, for the government. Thank you, your honor. Good. Uh, good morning. May it please the court, Nicholas Moskow for the United States of America. I also represented the United States at trial where the district judge did a charge in response to a jury note that was appropriate. Uh, any error in the charge was not clear or obvious. There was no prejudice resulting from the charge. And so far as the injustice in this case would be to overturn a jury's verdict based on a charge that was proper and was not objected to at the time it was given. Fortunately, this court need not reach any of those plain error factors. And so far as the defendant did waive any objection to the charge, in this case, this court has repeatedly held that when a defendant signs off on a charge, not merely through silence, but acquiescence to the charge, uh, that's sufficient to constitute a waiver. This is particularly important in the context of supplemental instructions, which are given by district judges off the fly in response to jury notes. It's important to prevent sandbagging or other gamesmanship by defense counsel. Courts have held in the context of supplemental instructions that signing off on the instruction by saying something like, I don't necessarily have a problem with that. It's efficient. That was the waiver that the court relied upon in the Williams case cited in the government's brief. In this case, the waiver was substantially stronger. Uh, the defendant not only heard the charge in full and said, right. A number of times that's correct. And I think the court's right about what the theory of defense is, but also modified the charge. The court was proposing to give the full black law dictionary definition of mistake. And the defendant rightly noted that the word misconception was not really appropriate in the context of this case. There was no theory by which the defendant had a misconception about something, error or misunderstanding were more appropriate. That's the colloquy that the court noted on page 300 of the appendix. After that modification on page 301, defense counsel noted that she thinks that that charge with the other charge, meaning the charge with the additional charge, meaning the charge that she had proposed on knowingly would be helpful. You have one more minute. Thank you. A clearer indication of the defense counsel did not have an objection to the charge would be hard to find. The fact that the defendant hadn't proposed the charge in the first instance, did not defeat a claim of waiver. That was the case in policy in which the government and defense had different charges. The court came out and proposed a charge and the defense signed off on that charge. This court held for the defendant had waived objection to the charge. Should the court get into the merits of a plain error review of the fact that the charge was balanced, not guilt presumptive and was appropriate should any inquiry. However, should the court be inclined to look at the prejudice, it's worth noting that the defendant testified, not that she had made a mistake and thought that she delivered the mail, but that she'd never said anything about a mistake. Moreover, the evidence that the defendant was delivering the mail, both in her car and the mail found two minutes from where she worked, but far from where it was processed and far from where it was supposed to be delivered was overwhelming. There was no doubt this case is going to result in a guilty verdict. The timing of it, uh, in the afternoon on Halloween, uh, does not suggest that the court's response to this note was somehow prejudicial. Uh, the government is prepared to address any questions. Judge winter, any questions? No. Judge Wesley. The, I don't really see the colloquy as some kind of, uh, uh, uh, strategist maneuvering with regards to Ms. Kelman, but, but I mean, it is the case though. I just was looking back through one 70 three council direct me at it. And I'd looked at it before. I mean, the, the, the cross examination of Lakaya by Ms. Kelman is fairly quite effective. I mean, he, he, he said that she said it's a mistake. And then, and then Ms. Kelman really kind of worked him back through about what, what the words mistake could mean. Is that a fair characterization? What the cross was about? Yes, your honor. Uh, and then the redirect clarified that, uh, when the defendant had told agent Lakaya that, well, he didn't remember her exact words. He said, uh, when asked, how do you understand her characterization of holding mail in her vehicle as a mistake? He answered that she was not supposed to do that. Supposed to deliver the mail in a timely manner. That's on page two or five, two or five of the government appendix. All right. Okay. Thank you. All right. I have no further questions. So thank you, Mr. Moskow. We'll now hear from Mr. For a few minutes of rebuttal. Yes, your honor. Um, so the main cases, the government sites in terms of waiver are Rahimi and Williams. Um, in Rahimi, the defendant specifically requested the charge at issue. We do not have that here in Williams. Um, the council explicitly accepted the court's instruction. Um, again, the defendant's position is that we never endorsed the prejudicial portion of the charge. Specifically. I know I did something wrong and I am sorry. Um, the other thing I would say or what I would, but Ms. Kelman said, right, exactly after that statement from judge Anna, correct. And that is correct. And, and, and my position to that would be that, um, Ms. Kelman was referring specifically to the portion of the charge that was about the defendant's defense trial, which she hadn't done this intentionally. Um, the last, what I would end with is that this error was preventable. And of course, as the government has cited, had a number of different permissible options. Um, the court could have, as the government stated in its reply, simply cited black law, that definition of mistake, which is an error or misunderstanding. Um, you have one more minute. The court could have actually used hypothetical facts, not in the context of this case, or as in sandals and Gleason to other cases cited by the government, the court could have issued a curative instruction to explain. It was not expressing an opinion on the facts of the case. Um, if there are no more questions, uh, for the foregoing reasons, the court should vacate Ms. Mitchell's conviction and remanded the district court for a new trial. Thank you. Okay. Thank you, Mr. Shul. Uh, no further questions from the panel. I'm assuming not. No, thank you. All right. So we'll resume decision. Thank you both very much. Have a good day.